IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
RICARDO ABRAHAM GONZALEZ-CASTRO,    )
                                    )
               Petitioner,          )
                                    )
          v.                        )    1:13CV1120
                                    )
BOB MARSHALL,                       )
FRANK L. PERRY,¹                    )
                                    )
               Respondents.         )
```

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 3.) On August 10, 2010, in the Superior Court of Guilford County, Petitioner pled guilty to conspiracy to traffic in more than 400 grams of cocaine, trafficking by possessing more than 400 grams of cocaine, and trafficking by transporting more than 400 grams of cocaine, in cases 09 CRS 042811-13, and received a consolidated judgment with a statutorily-mandated term of 175 to 219 months in prison. (Id., ¶¶ 1-6; id. at 114-15.) He did not appeal. (Id., ¶ 8.)

---

¹ Consistent with Rule 2(a) of the Rules Governing Section 2254 Cases, the Petition in this case originally named Kieran J. Shanahan, then-Secretary of the North Carolina Department of Public Safety, as Respondent. (Docket Entry 3.) Frank L. Perry currently serves in that position, see https://www.ncdps.gov/Index2.cfm?a=000003,000008,000153,002681 (last visited Jan. 13, 2015), and by operation of Federal Rule of Civil Procedure 25(d) (applicable to this proceeding pursuant to Rule 12 of the Rules Governing Section 2254 Cases), now appears as Respondent.

On August 3, 2011, Petitioner filed a Motion for Appropriate Relief ("MAR") with the trial court. (Id., ¶ 11(a); id. at 73-97.)[2] On November 23, 2011, the trial court denied Petitioner's MAR. (Id., ¶ 11(a); id. at 71-72; Docket Entry 7-2.)[3] Petitioner then sought certiorari review with the North Carolina Court of Appeals on January 17, 2012. (Docket Entry 3, ¶ 11(b); id. at 53-70.)[4] On February 28, 2012, the North Carolina Court of Appeals denied that petition. (Id., ¶ 11(b); Docket Entry 7-4 at 2.)

Finally, Petitioner signed his Petition, under penalty of perjury, and dated it for mailing on December 16, 2013 (Docket

---

[2] The Petition lists August 3, 2011, as the date Petitioner filed his MAR with the trial court. (Docket Entry 3, ¶ 11(a).) However, in the trial court's opinion denying Petitioner's MAR, the trial court listed the MAR as filed on August 10, 2011. (See id. at 71; Docket Entry 7-2 at 2.) Despite the inconsistency, the undersigned will give Petitioner the benefit of the doubt and use Petitioner's date of August 3, 2011, as either date results in the same recommendation of dismissal.

[3] Petitioner included with his Petition a full copy of the trial court's opinion denying his MAR printed in double-sided fashion, but the Clerk's Office did not scan both sides, such that only two of the three pages appear on CM/ECF. (See Docket Entry 3 at 71-72.) Respondent also included a full copy of the trial court's decision in its filing. (See Docket Entry 7-2.)

[4] Petitioner signed the certificate of service for that certiorari petition on January 17, 2012, and listed that as the date of filing in his instant Petition (see Docket Entry 3, ¶ 11(b); id. at 70); however, the North Carolina Court of Appeals referred to the certiorari petition as filed on February 16, 2012 (see Docket Entry 7-4 at 2). The State also referred to that certiorari petition as filed on February 16, 2012, in its response. (See Docket Entry 7-3 at 2.) Regardless of whether Petitioner filed the certiorari petition on January 17, 2012, or February 16, 2012, Petitioner still filed the instant Petition untimely.

2

Entry 3 at 17), and the Court stamped and filed the Petition on December 19, 2013 (id. at 1).[5] Respondent has moved for summary judgment on the merits (Docket Entry 7 at 2-14) and for violating the statute of limitations (id. at 14-20). Petitioner responded. (Docket Entry 9.) For the reasons that follow, the Court should grant Respondent's instant Motion because Petitioner filed his Petition outside of the one-year limitations period.[6]

**Petitioner's Claims**

The Petition raises four grounds for relief: (1) "Ineffective [a]ssistance of [c]ounsel" for failing to "investigate to the fullest" and for violation of "Article 36 of the Vienna Convention" (Docket Entry 3 at 35-37); (2) "The trial [c]ourt erred by [a]dmitting an indictment that is [d]efective" because the "[e]vidence [p]resented to the Grand Jury of Guilford County [d]id [n]ot [a]mount to [p]rove [b]eyond [a] REASONABLE DOUBT that [Petitioner] was [the] [p]erpretrator [sic] of the crime" (id. at 43 (emphasis in original)); (3) "The [trial] [c]ourt [e]rred [b]y [a]ccepting [t]he [g]uilty [p]lea when there is no [f]actual [b]asis, [a]nd [t]he [p]lea [w]as [n]ot knowing, voluntary and

---

[5] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems the instant Petition filed on December 16, 2013, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities. (See Docket Entry 3 at 17.)

[6] Given the recommendation of dismissal for untimeliness, the undersigned elects not to address Respondent's arguments on the merits.

3

intelligent" (id. at 44) and the "sentence was grossly [d]isproportionate" to the offense (id. at 46); and (4) "Violation of the Equal Protection Clause by denying [r]etroactivity of the law" (id. at 34) specifically North Carolina General Statute "§ 90-96(a)" (id. at 51).

## Discussion

Respondent moves for summary judgment on the grounds that Petitioner filed his Petition outside of the one-year limitations period, see 28 U.S.C. § 2244(d)(1). (Docket Entry 7 at 14-20.) In order to assess Respondent's statute of limitations argument, the undersigned must first determine when Petitioner's one-year period to file his Petition commenced. The United States Court of Appeals for the Fourth Circuit has explained:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). The Court must determine timeliness on claim-by-claim basis. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005). Neither Petitioner nor Respondent contend that subparagraphs (B) or (C) apply in this situation. (See Docket Entries 3, 5, 6, 7, 9.) However, Petitioner does assert that subparagraph (D) applies. (Docket Entry 3 at 27.) Alternatively, Petitioner argues, for reasons detailed below, that the statute of limitations should not prohibit the Court from addressing the merits of his case. (Id. at 27-33.) Thus, the undersigned must first determine which subparagraph applies in order to decide when the statute of limitations commenced.

Under subparagraph (D), the one-year limitations period begins when the factual predicate of a claim "could have been discovered through the exercise of due diligence," not upon its actual discovery. 28 U.S.C. § 2244(d)(1)(D); Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004); see also Johnson v. Polk, No. 1:07CV278, 2008 WL 199728, at *3 (M.D.N.C. Jan. 22, 2008) (unpublished) (Tilley, J., adopting recommendation of Sharp, M.J.) ("Under 28 U.S.C. § 2244(d)(1)(D), the limitations period begins to run when the petitioner knows, or through due diligence could

5

discover, the important facts underlying his potential claim, not when he recognizes their legal significance.").

Although Petitioner contends that subparagraph (D) applies, Petitioner does not elaborate on the reasoning for its application to his claims or to which claims it should apply. (See Docket Entry 3 at 27-33.) Instead, Petitioner's arguments mainly address the need for equitable tolling of the statute of limitations. (Id.) Thus, Petitioner has not borne "the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim . . . ." DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006). In an abundance of caution, the undersigned nonetheless will review the applicability of subparagraph (D) to Petitioner's claims.

At the time Petitioner pled guilty, he either knew or through due diligence should have known whether his counsel provided ineffective assistance by failing to investigate the charges against Petitioner; whether he had received a consular visit in accord with Article 36 of the Vienna Convention; whether the State used a defective indictment; whether the State had presented a factual basis for his pleas; and the length of his sentence for purposes of determining whether it qualified as grossly disproportionate to the crime. The only possible basis for application of subparagraph (D) lies in Ground 4, in that

6

Petitioner there claims that North Carolina General Statute Section 90-96, as modified by the Justice and Reinvestment Act of 2011, retroactively applies to his case. (See Docket Entry 3 at 48-51.) Because Section 90-96 did not go into effect until January 1, 2012, see N.C. Sess. Law 2011-192, Petitioner could not have utilized Section 90-96 as a basis for relief until that time.

At the time Section 90-96 went into effect, Petitioner had started pursuing his MAR in state court. (See Docket Entry 3, ¶ 11.) The filing of his MAR tolled the one-year statute of limitations until the North Carolina Court of Appeals denied Petitioner's certiorari petition on February 28, 2012. (See id., ¶ 11(b)(8).) The statute of limitations for Ground 4 then ran, unimpeded, for one year until its expiration on February 28, 2013. Thus, the statute of limitations for Ground 4 expired prior to Petitioner's submission of the instant Petition on December 16, 2013, rendering that claim untimely even under subparagraph (D).[7]

As to the remaining claims, under subparagraph (A), Petitioner's conviction, for purposes of the statute of limitations, became final on August 10, 2010 - the day of his conviction. North Carolina limits the rights of individuals who

---

[7] Even if the Court reached the merits of this claim, it would still fail, as previously held, the Justice Reinvestment Act of 2011 does not operate retroactively and its failure to do so does not violate the Equal Protection Clause. See Minton v. Perry, No. 1:12CV497, 2014 WL 5605632, at *6-7 (M.D.N.C. Nov. 4, 2014) (unpublished).

plead guilty to appeal their convictions. See N.C. Gen. Stat. § 15A-1444 (2010). Here, the trial court sentenced Petitioner to a consolidated prison sentence of 175 to 219 months (Docket Entry 3-2 at 41-43) - the statutorily required term for trafficking by possessing, transporting, or delivering 400 grams or more of cocaine, see N.C. Gen. Stat. § 90-95(h)(3)(c) (2010). Therefore, Petitioner could not appeal his conviction as a matter of right. See N.C. Gen. Stat. § 15A-1444 (2010). Petitioner's case thus became final, for purposes of calculating the limitation period, on August 10, 2010. See Gonzalez v. Thaler, __ U.S. __, __, 132 S. Ct. 641, 653-54 (2012) (holding that a petitioner's case becomes final when the time for pursuing direct review expires); see also Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004) (finding that, because the petitioner did not have a right to appeal, the limitation period ran from the day of judgment) (Osteen, Sr., J., adopting the recommendation of Dixon, M.J.).[8]

Petitioner's one-year period ran from August 10, 2010, until August 3, 2011 (seven days before its expiration), when Petitioner filed his MAR in state court. (Docket Entry 3, ¶ 11.) The statute then tolled until the North Carolina Court of Appeals denied

---

[8] Even if Petitioner had the opportunity to appeal, the North Carolina Rules of Appellate Procedure require a notice of appeal within fourteen days of judgment. N.C.R. App. P. 4(a)(2). Thus, Petitioner's ability to appeal would have expired August 24, 2010, and the limitations period would have expired, after tolling, on March 21, 2012 - well before he submitted the instant Petition.

Petitioner's certiorari petition on February 28, 2012. (Id., ¶ 11(b); Docket Entry 7-4 at 2.) The statute then ran until its expiration seven days later on March 7, 2012, well before Petitioner submitted the instant Petition on December 16, 2013. (See Docket Entry 3 at 17.) Therefore, under subparagraph (A), Petitioner filed his first, second, and third claims untimely, outside of the statute of limitations.

Despite the instant Petition's untimeliness, Petitioner requests that the Court address the merits of his Petition. (Id. at 27.) Although the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one-year statute of limitations for habeas claims, see 28 U.S.C. § 2244(d)(1), a court can equitably toll the one-year limitations period, see Holland v. Florida, 560 U.S. 631, 634 (2010). Equitable tolling requires that Petitioner demonstrate that (1) he has diligently pursued his rights, and (2) extraordinary circumstances prevented a timely filing. Id. at 649. Equitable tolling involves a case by case analysis. Id. at 649-50.

Here, Petitioner argues Trevino v. Thaler, __ U.S. __, 133 S. Ct. 1911 (2013), and Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309 (2012), provide an exception to the statute of limitations; further, he claims ineffective assistance of counsel, his actual innocence, his lack of legal fluency, denial of assistance by the North Carolina Prisoner Legal Services, and the lack of a law

9

library as reasons to excuse his untimely filing. (See Docket Entry 3 at 27-33.) The undersigned will address each argument in turn.

Both Trevino and Martinez addressed whether a court could bypass the procedural default rule to address claims of ineffective assistance of counsel in certain situations. See Trevino, 133 S. Ct. at 1915; Martinez, 132 S. Ct. at 1313. In both cases, the Supreme Court held that, where petitioners, under state law or as a matter of practice, cannot claim ineffective assistance of counsel on direct review, the procedural default rule will not prevent a federal court from addressing the issue if petitioners had either no counsel or ineffective counsel in the initial-review collateral proceeding. Trevino, 133 S. Ct. at 1921; Martinez, 132 S. Ct. at 1320. Neither case overruled or even addressed the statute of limitations as Petitioner claims (see Docket Entry 3 at 28-31). See Trevino, 133 S. Ct. at 1911; Martinez, 132 S. Ct. at 1309. Thus, Petitioner erroneously relies on Trevino and Martinez.

Petitioner alleges that his trial counsel provided ineffective assistance in the investigation and sentencing aspects of his conviction. (See Docket Entry 3 at 27-33.) Even assuming Petitioner's counsel provided ineffective assistance, Petitioner fails to demonstrate how that prevented him from timely filing his Petition in this Court.

Petitioner also contends that his actual innocence ought to prevent application of the statute of limitations. (Docket Entry 3 at 31-32.) The United States Supreme Court has recognized that a showing of actual innocence may overcome the one-year statute of limitations. McQuiggin v. Perkins, ___ U.S. ___, ___, 133 S. Ct. 1924, 1928 (2013). However, the Court also recognized that showings of actual innocence "are rare," and that a petitioner must demonstrate that no reasonable juror could vote to find the petitioner guilty beyond a reasonable doubt. Id. In this case, Petitioner provides nothing beyond his conclusory allegations of innocence. Furthermore, Petitioner's guilty plea undercuts his argument that he "claimed his [i]nnocence from day one . . . ." (Docket Entry 3 at 31.) Simply, Petitioner does not present the "rare" case required by McQuiggin.

Petitioner's final arguments - that he lacks legal fluency, the North Carolina Prisoner Legal Services denied assistance, and he lacks access to a law library - do not provide a sufficient basis for tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) ("[I]gnorance of the law is not a basis for equitable tolling."); Johnson v. Beck, No. 1:08CV336, 2008 WL 3413303, at *4 (M.D.N.C. Aug. 8, 2008) (refusing to toll when prisoner did not have access to a library, but did have access to North Carolina Prisoner Legal Services), recommendation adopted, slip op. (Docket Entry 17) (M.D.N.C. Feb. 12, 2009); see also Rhew

11

v. Beck, 349 F. Supp. 2d 975, 978 (M.D.N.C. 2004) (Osteen, Sr., J, adopting recommendation of Eliason, M.J.) (refusing to toll when prisoner cited delays by North Carolina Prisoner Legal Services), appeal dismissed, 158 F. App'x. 410 (4th Cir. Dec. 13, 2005) (unpublished). Furthermore, Petitioner's ability to file his MAR and to petition for a writ of certiorari in state court notwithstanding these conditions undermine his request for tolling.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 6) be granted, the Petition (Docket Entry 3) be denied, and that Judgment be entered dismissing this action, without issuance of a certificate of appealability.

                                        /s/ L. Patrick Auld
                                           **L. Patrick Auld**
                           **United States Magistrate Judge**

January 21, 2015